**E-FILED**
Friday, 11 May, 2012 12:13:00 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| ANGELINA CIANFAGLIONE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TERRY ROGERS, DEE BURGIN, ) <br> ROBERT WILSON, BEVERLY WEGER, ) <br> and EDGAR COUNTY, ILLINOIS ) <br> ) <br> Defendants. ) | Case No. 10-CV-02170 |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment [21] and the Motion to Strike [29] filed by the Defendants, Terry Rogers ("Rogers"), Dee Burgin ("Burgin"), Robert Wilson ("Wilson"), Beverly Weger ("Weger") and Edgar County, Illinois ("Edgar County"). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review: (1) Defendants' Motion for Summary Judgment [21] is GRANTED in part and DENIED in part; and (2) Defendants' Motion to Strike Affidavits [29] is DENIED.

## FACTS[1]

### I. Background Events

On May 19, 2008, Plaintiff, Angelina Cianfaglione, who was a resident of Edgar

---

[1]The facts are taken from the parties statement of undisputed facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record. Also, numerous facts are disputed and these disputed facts have been included in the light most favorable to Plaintiff—the nonmoving party.

County, Illinois, received a citation for driving on a suspended license. After pleading not guilty to driving on a suspended license and demanding a jury trial, Plaintiff failed to appear for a scheduled court appearance at the Edgar County Courthouse on August 14, 2008. Judge David Lewis ordered a warrant to issue for Plaintiff's arrest and set bond at $4,000. In the days between August 14, 2008 and August 20, 2008, Plaintiff alleges that: (1) she contacted the Sheriff of Edgar County and was told that a warrant would be issued for her arrest in a few days and that the bond would be $400 and that once issued, she could turn herself in at the jail; (2) she repeatedly checked the "Judici" website to see if her warrant had been issued and it had not; and (3) she contacted the Circuit Clerk's office on August 20, 2008 about the warrant and was told it was not yet issued.

## II. Events on August 20, 2008

On August 20, 2008, Defendants Rogers and Burgin, who were deputies of the Sheriff of Edgar County, Illinois, were in a marked police vehicle in a close proximity to Plaintiff's home.[2] At approximately 5:00 p.m., Plaintiff, with her young son in the backseat of her vehicle, left her home to drive to a restaurant in Paris, Illinois. Defendant Rogers, at some point prior to August 20, 2008, became aware that there was a warrant ordered issued for Plaintiff's arrest relating to a missed court appearance. At the time Plaintiff started driving away from her home on August 20, 2008, Defendant Rogers called Assistant State's Attorney Allen A. Bell Jr. ("ASA Bell"), to ask him whether a warrant for Plaintiff's arrest was still in

---

[2]Plaintiff apparently noticed the marked police vehicle parked close to her home and was told by a visitor that deputies Rogers and Burgin were sitting in the vehicle. She first noticed the marked police vehicle around 3:00 p.m.

effect. ASA Bell provided an affidavit stating that on August 20, 2008, he informed Defendant Rogers "that a valid warrant for the arrest of [Plaintiff] was in existence and that he could seek to arrest her in connection with said warrant."[3] After receiving this information from ASA Bell, Defendants Rogers and Burgin pulled Plaintiff's vehicle over near the restaurant she was traveling to.

Plaintiff alleges that after she came to a stop, Defendants Rogers and Burgin walked up to her vehicle and asked her "have you been doing methamphetamine today" and "how much methamphetamine have you smoked today." Plaintiff immediately denied using or possessing any methamphetamine. At this point, there are factual disputes regarding the exact timing of events, however Plaintiff requested that Defendants Rogers and Burgin not continue their inquiry until the father of Plaintiff's child arrived to take the child away from the scene. This apparently occurred in approximately five minutes. During this five minute "delay," Plaintiff alleges that Defendant Rogers searched her purse and cell phone without her explicit consent.[4]

After Plaintiff's child left the scene with his father, Plaintiff was now standing outside of her vehicle. At this time, Plaintiff's pockets were checked for contraband and her car doors and trunk were opened. Next, the narcotic detector canine—AJ, who was handled by

---

[3]ASA Bell also explained that the Edgar County State's Attorney Office had a policy of immediately seeking the arrest of individuals once the Edgar County Court ordered a warrant to issue for individuals failing to appear for mandated pretrial conferences.

[4]It is not clear whether or not Plaintiff was ever asked to consent to the search of her purse or phone, however she never affirmatively gave consent, but did not appear to challenge the search either.

3

Defendant Burgin—was brought out and walked around Plaintiff's vehicle. Defendants Burgin and Rogers allege that AJ made a signal, which was sitting down, for contraband.[5] After AJ allegedly made an alert on Plaintiff's vehicle, Defendants Burgin and Rogers searched Plaintiff's vehicle, but did not discover any narcotics or contraband. After the unsuccessful search of Plaintiff's vehicle, they placed her under arrest pursuant to the warrant they were informed existed for her arrest by ASA Bell. They placed her in handcuffs and transported her to the Edgar County Jail. Plaintiff's testimony regarding the force used to put on the handcuffs and during the remainder of her interactions with Defendants Burgin and Rogers is disputed, and will be discussed below.

Upon arrival at the Edgar County Jail, Defendants Rogers and Burgin ordered that Plaintiff be strip searched.[6] The sole basis for ordering this strip search was the suspicion that Plaintiff had illegal contraband on her person, a suspicion which was based solely on the narcotic detector canine alert made by AJ when walking around Plaintiff's vehicle. Defendants have not offered any other facts supporting this suspicion, such as a previous criminal history of illegal drug use or possession or any information that would have led them to believe that she was carrying illegal drugs on August 20, 2008. According to Plaintiff, Defendant Wilson, who was a deputy of the Sheriff of Edgar County and was working in the Edgar County Jail on the night in question, told Defendants Rogers and

---

[5]Plaintiff disputes that any such alert was made. In her deposition, Plaintiff explained that AJ walked around the car about six times and that she was not sure if AJ entered the car at any time.

[6] During the time that Plaintiff was being held at the Edgar County Jail, Defendants Rogers and Burgin conducted a search of Plaintiff's home.

4

Burgin that they "shouldn't be doing this . . . because that's not even signed yet."

Pursuant to Defendants Rogers and Burgin's orders, Defendant Weger, a female part-time employee of the Office of the Sheriff of Edgar County, conducted a strip search of the Plaintiff. According to the Defendants' version of events, Plaintiff was subjected to an ordinary visual strip search. According to Plaintiff's version of events, she was subjected to a much more invasive type of search. Specifically, Plaintiff alleges that she was ordered to strip off all of her clothes and bend over and touch her toes. After complying with this order, Plaintiff alleges Defendant Weger conducted a body cavity search with the assistance of a flashlight and rubber gloves. Plaintiff alleges, that in the process of completing a body cavity search, Defendant Weger touched her "vagina to spread her apart and touched [her] buttocks with her hands and spread the cheeks apart." No illegal drugs were found during the search of Plaintiff's person. Plaintiff was then allowed to put her clothes back on and was allowed to pay $400 bond[7] to Defendant Wilson who signed the Bail Bond Receipt and allowed Plaintiff to leave the Edgar County Jail.

The bench warrant for Plaintiff's arrest was issued and signed by Judge David Lewis on August 21, 2008. The warrant for Plaintiff's arrest was received by the Edgar County Sheriff, Timothy Cripes, on August 21, 2008, and was signed as executed by Defendant Wilson on August 21, 2008.[8]

---

[7]Plaintiff alleges that she told Defendants Rogers and Burgin on numerous occasions that she had the $400 bond that was needed for her missed court appearance.

[8]On the "Peace Officers Return" portion where Defendant Wilson signed, he completed the form indicating that Plaintiff was arrested on August 21, 2008. Obviously, this was not accurate, however it is not relevant to Plaintiff's claims.

### III. Possible Contradictory Testimony

During Plaintiff's deposition, she did not testify that Defendants Burgin or Rogers used any force on her besides placing her in handcuffs. Additionally, Plaintiff, during her deposition, did not indicate that the handcuffs were placed on too tightly or that she ever told Defendants Burgin or Rogers that the handcuffs were on too tight. However, in an affidavit completed by Plaintiff on March 3, 2012, which was over one month after Defendants filed their Motion for Summary Judgment [21], she stated that:

> When Terry Rogers ordered that I be taken to the jail, my arms were grabbed and pulled behind my back roughly and I was handcuffed so tightly that my wrists hurt. . . . I was physically grabbed and touched when I was put in the police car to be taken to the jail. . . . There was no need to handcuff me or to grab me roughly because, except for giving consent to search, I did everything that I was ordered to do and I never tried to run away or resist the officers in any way.

Additionally, during Plaintiff's deposition, when asked about the narcotic detector canine's search of her vehicle, she explained that the dog walked around her car about six times, but when asked if the dog actually went inside the car, she simply said that she did not know if it went in the car and that "[i]t was allowed to do whatever." In her affidavit completed on March 3, 2012, Plaintiff stated that:

> After I was told to get out of my car, I did so and I stood near my car watching Burgin take the dog "AJ" out of the SUV and I watched Burgin walk "AJ" around my car at least six times. . . . I was able to clearly see whatever "AJ" was doing and that dog just walked and never sat down, never barked, never scratched, never did anything except walk and then it was put back in the marked SUV.

## PROCEDURAL BACKGROUND

On August 3, 2010, Plaintiff filed a Complaint [1] against the Defendants. Plaintiff's Complaint [1] contained three counts: (1) Count I alleges an illegal seizure of Plaintiff in

6

violation of the Fourth Amendment by Defendants Burgin, Rogers and Wilson; (2) Count II alleges the use of excessive force by Defendants Burgin, Rogers and Wilson against Plaintiff in violation of the Fourth Amendment; and (3) Count III alleges an illegal strip and body cavity search of Plaintiff in violation of the Fourth Amendment by Defendants Burgin, Rogers, Wilson and Weger.

On February 1, 2012, Defendants filed a Motion for Summary Judgment [21] on all counts. On March 6, 2012, Plaintiff filed a Response [26], which contained numerous affidavits, including affidavits of a few individuals who explained that Defendants Rogers and Burgin have a reputation in the community for untruthfulness. On March 19, 2012, Defendants filed a Reply [30] in support of their Motion for Summary Judgment [21]. Additionally, Defendants filed a Motion to Strike Affidavits [29], arguing that certain affidavits provided by Plaintiff in her Response [26] are improper and should be stricken by this court. On April 2, 2012, Plaintiff filed a Response [31] to Defendants' Motion to Strike Affidavits [29].

## MOTION FOR SUMMARY JUDGMENT [21] ANALYSIS

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."

Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F. Supp. 2d at 929 (citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998)).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23. Conclusory allegations not supported by the record are not enough to withstand summary judgment. Basith v. Cook Cnty., 241 F.3d 919, 928 (7th Cir. 2001).

Nevertheless, uncorroborated testimony from the non-movant, even if self-serving, can be evidence of disputed material facts and therefore prevent summary judgment, as long as such testimony is based on personal knowledge or firsthand experience. Berry v. Chicago

Transit Auth., 618 F.3d 688, 691 (7th Cir. 2010). Moreover, "[i]t is not for courts at summary judgment to weigh evidence or determine the credibility of [a witness's] testimony; we leave those tasks to factfinders." Id.

## II. Unlawful Arrest Claim

In this case, Plaintiff's unlawful arrest claim is based on Defendants Rogers, Burgin and Wilson's[9] arrest of Plaintiff on August 20, 2008. Initially, it is undisputed that there was not a valid warrant for Plaintiff's arrest on August 20, 2008—actually, the warrant for her arrest in connection with her failure to appear in court was not issued until August 21, 2008, a day after Plaintiff was arrested by Defendants Rogers and Burgin. It is also undisputed that Plaintiff was pulled over, at least initially, solely on the basis that Defendants Rogers and Burgin incorrectly believed there was a valid warrant for Plaintiff's arrest for her failure to appear in court. Therefore, Defendants argue that they are entitled to summary judgment on Plaintiff's unlawful arrest claim because they reasonably believed that there was a warrant for Plaintiff's arrest at the time of her arrest and therefore are entitled to qualified immunity.

Immediately prior to pulling Plaintiff over, Defendant Rogers contacted ASA Bell. ASA Bell informed Defendant Rogers that a valid warrant for Plaintiff's arrest was in effect. Plaintiff hypothesizes that ASA Bell "either lied to Rogers or negligently gave false information without even checking." Nevertheless, besides this speculation, Plaintiff has

---

[9]This court is not sure how Defendant Wilson was involved in this alleged unlawful arrest. He was not at the scene of the arrest and appears to solely have been working at the jail upon Plaintiff's arrival.

9

offered no evidence that would allow this court to find that ASA Bell did not inform Defendants Rogers and Burgin that a valid warrant existed for Plaintiff's arrest on August 20, 2008. Also, it is undisputed that Plaintiff did commit a crime on August 14, 2008, by failing to appear in court on her driving on a suspended licence charge, a crime which Rogers and Burgin were aware of. Nevertheless, the probable cause determination was not made by Judge Lewis until August 21, 2008, when the arrest warrant was signed.

Qualified immunity insulates government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (7th Cir. 2010). To determine whether an official is entitled to qualified immunity, this court must determine: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." Purvis v. Oest, 614 F.3d 713, 720 (7th Cir. 2010). In this case, Plaintiff was arrested solely on the basis of a warrant Defendants believed to have been issued, but in fact had not yet been signed. Therefore, this arrest violated Plaintiff's constitutional rights which were clearly established at the time of her arrest. See, e.g., Humphrey v. Staszak, 148 F.3d 719 (7th Cir. 1998) (explaining that the right to be free from arrest without probable cause is well-established).

Nevertheless, the Seventh Circuit has explained that "a defendant is entitled to qualified immunity in a false-arrest claim when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed." Fleming v. Livingston

10

Cnty., 674 F.3d 874 (7th Cir. 2012) (internal citations and quotations omitted). This standard is referred to as "arguable probable cause," which if present, entitles the defendant to qualified immunity. Id. "Arguable probable cause is established when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." Id. (internal citations and quotations omitted). In this case, Defendant Rogers was informed immediately before the arrest that there was a valid arrest warrant in effect for Plaintiff. Such an arrest warrant, when issued by a judge, is a judicial determination that probable cause exists for an arrest. Therefore, based on this knowledge, which was received from ASA Bell, Defendants certainly reasonably believed that probable cause existed for Plaintiff's arrest. Moreover, the basis for Defendants Rogers' belief that there was probable cause for Plaintiff's arrest was received directly from the prosecuting attorney. The Seventh Circuit has explained that "[c]onsulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity." Kijonka v. Seitzinger, 363 F.3d 645, 648 (7th Cir. 2004). Therefore, under these circumstances, Defendants Rogers, Burgin and Wilson are entitled to summary judgment on Plaintiff's unlawful arrest claim.

### III. Excessive Force Claim

The Fourth Amendment protects citizens from use of excessive force in the course of an arrest or investigatory stop. See e.g., Gonzalez v. City of Elgin, 578 F.3d 526, 539 (7th Cir. 2009). Claims that law enforcement officers have used excessive force are analyzed

11

under the Fourth Amendment reasonableness standard.  Padula v. Leimbach, 656 F.3d 595, 602 (7th Cir. 2011).  The Seventh Circuit has instructed courts to consider a number of possibly relevant factors, such as the severity of the crime at issue, whether the suspect poses an immediate safety threat to the officers or public, and whether the suspect is resisting arrest or attempting to escape.  Id. (citations omitted).

In the particular context of claims based on the use of handcuffs, the Seventh Circuit has explained that "[a]n officer who has the right to arrest an individual also has the right to use some degree of physical force . . . to effectuate the arrest, but that right is circumscribed by the Fourth Amendment's insistence on reasonableness."  Stainback v. Dixon, 569 F.3d 767, 772 (7th Cir. 2009) (internal citations omitted).  Specifically, an officer "may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury.  Id.  "However, a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him."  Id. at 773 (citing Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir. 2006) (explaining that no reasonable jury could find the officers actions objectively unreasonable when the plaintiff only complained that the handcuffs were too tight once, only was handcuffed for thirty minutes, suffered minimal redness on his wrists for two days, and never received medical care for his alleged wrist injury).

In this case, Plaintiff's allegations fall well short of raising a genuine issue of material fact regarding whether Defendants Rogers or Burgin used excessive force.  Although it is undisputed that: (1) the crime Plaintiff was arrested for was minor, (2) she was not resisting

12

arrest in any manner; and (3) that she did not pose any risk to the officers or the general public; the minimal force Defendants used at the scene of the arrest cannot arise to the level of excessive force, given all of the facts and circumstances.

Initially, it is important to identify what force was actually used by the Defendants in effectuating Plaintiff's arrest. Plaintiff's Complaint [1] stated that either Defendant Rogers or Burgin "touched, shoved, grabbed and/or handcuffed the Plaintiff." Importantly, despite being asked on two separate occasions during her deposition, Plaintiff never mentioned that any force had been used against her. Rather, in responding to a question of what she meant by excessive force at the scene of the arrest, she responded:

> I would say the excessive force would have been standing up against my car door not letting me out of the car, not really telling me why I, you know, why I can't get out of my car or nothing, pulling me over to begin with. . . . Making me look like I'm some drug head to my son and everybody around there that was just standing there staring at us while the whole thing went on.

Additionally, she was asked whether or not she was shoved by anyone, grabbed by anyone, or if she was ever in physical pain. She responded that Defendant Rogers did not touch her in any way and stated that she did not recall if Defendant Burgin ever touched her. Later, she acknowledged that the officers touched her arms to put on handcuffs, and she felt that using handcuffs was too much force because she was not resisting arrest.

In contrast to her deposition testimony, Plaintiff, in an affidavit signed on March 3, 2012, stated that when she was handcuffed, her arms were grabbed and pulled behind her back roughly and that the handcuffs were placed on so tightly that her wrists hurt. Initially, this court finds that Plaintiff's statements contained in her affidavit regarding the use of force

13

are clearly contradictory to her deposition testimony and Plaintiff fails to give any explanation for the discrepancy—therefore the statements in her affidavit regarding the use of force are so lacking in credibility that they are entitled to no weight in this Motion for Summary Judgment [21] . See e.g., Beckel v. Wal-Mart Associates, Inc., 301 F.3d 621, 623 (7th Cir. 2002).

Therefore, based on Plaintiff's deposition, the force used that forms the sole basis for Plaintiff's excessive force claim was the act of placing her in handcuffs. Because an officer has the right to use some degree of physical force to effectuate an arrest, and there was no unnecessary pain or injury inflicted on Plaintiff by the Defendants when they handcuffed Plaintiff, her excessive force claim must fail. See e.g., Stainback, 569 F.3d at 772. Even if this court considered the statements contained in Plaintiff's affidavit, her excessive force claim would still fail. Considering her affidavit, the Plaintiff's arms were pulled "roughly" and the handcuffs were so tight that they hurt. However, Plaintiff never informed Defendants Rogers or Burgin that they were too tight. Additionally, Plaintiff does not explain that she suffered any physical injury, even a temporary injury such as swollen wrists. Therefore, no reasonable jury could find that the force used by Defendants was objectively unreasonable because Plaintiff was only handcuffed for a short period of time, never complained of the handcuffs being too tight, and suffered no physical injury.[10] See e.g., Tibbs, 469 F.3d at 666.

---

[10]Although the fact that Plaintiff suffered no injury is not dispositive, it does call into question how truthful her assertion is that the handcuffs were placed on too tightly.

## IV. Unlawful Strip Search & Body Cavity Search Claim

This court has little trouble denying Defendants' Motion for Summary Judgment [21] on Count III of Plaintiff's Compliant. Defendants argue solely that the strip search was justified based on Deputies Burgin & Rogers' arguably reasonable suspicion that Plaintiff was concealing contraband on her person. Even if there was reasonable suspicion[11] that Plaintiff had contraband on her person, the body cavity search that Plaintiff describes goes well beyond the permissible limits of a search based on such suspicion.[12]

Plaintiff, who clearly has personal knowledge of what occurred to her during the events in question, has testified that she was subjected to a strip search and a visual body cavity search—a search which allegedly included Defendant Weger touching and spreading Plaintiff's vagina and anus.[13] The Seventh Circuit, when discussing visual body cavity searches, explains that "we can think of few exercises of authority by the state that intrude on

---

[11]This court makes no determination whether or not their suspicion was reasonable, because it is clear that even if their suspicion was reasonable, the alleged search would not have been justified.

[12]This court notes that the Supreme Court recently held that the strip search of an individual who will be admitted into the inmate population of a facility is generally permissible. See Florence v. Bd. of Chosen Freeholders of the Cnty. Of Burlington, 132 S. Ct. 1510 (2012). However, Florence is not applicable to this case because Defendants concede that the sole justification for ordering the strip search was the suspicion that Plaintiff was concealing contraband on her person. Id. at 1522 ("This case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees."). Therefore, Florence will not be considered because it is not applicable to the admitted facts in this case.

[13]Although it is undisputed that Plaintiff was subjected to a strip search, Defendants uniformly contest the assertion that Plaintiff was subjected to a body cavity search. Therefore, because credibility determinations are required to reach a conclusion of what level of search Plaintiff was subjected to, this is clearly a genuine issue of material fact.

the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here." Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983). Here, Plaintiff alleges that the intrusion she suffered was more invasive than a "simple" visual body cavity search. Therefore, it is clear the alleged intrusion into Plaintiff's privacy and dignity would require a strong justification—one that has not been provided by Defendants. Therefore, this court denies Defendants' Motion for Summary Judgment [21] on Count III.

### MOTION TO STRIKE [29] ANALYSIS

Defendants, in their Motion to Strike [29] asked this court to: (1) strike portions of Plaintiff's March 3, 2012, affidavit; (2) strike portions of Plaintiff's Response to Defendants' Motion for Summary Judgment [21]; and (3) strike the affidavits of Tracy George Hall, Cindy Farris, and Kevin Farris. Defendants' Motion to Strike [29] was largely unnecessary and should have been dealt with in Defendants' Reply in support of their Motion for Summary Judgment.[14] Therefore, Defendants' Motion to Strike [29] is DENIED as all issues discussed therein have no impact on this court's analysis of the Defendants' Motion for Summary Judgment [21].

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment [21] is GRANTED in part and DENIED in part.

(2) Plaintiff may proceed to trial on Count III of her Complaint [1] which alleges that

---

[14]For example, this court did not consider the affidavits of Hall, Cindy Farris or Kevin Farris because the credibility of any witness has no impact on summary judgment rulings—and this court did not need a reminder of the irrelevant nature of such affidavits.

Defendant Weger conducted an illegal strip search and body cavity search of the Plaintiff in violation of the Fourth Amendment at the direction of Defendants Rogers, Burgin and Wilson. There are two key questions which will be the focus of the trial: (1) was there reasonable suspicion to conduct a strip search of the Plaintiff for contraband; and (2) if there was reasonable suspicion to conduct a strip search, was the scope the search conducted by Defendant Weger at the Edgar County Jail unconstitutional.

(3) Defendants' Motion to Strike [29] is DENIED.

ENTERED this 11th day of May, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE